UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SYMONS BY DAYTON SUPERIOR, a division of DAYTON SUPERIOR CORPORATION, a Delaware corporation, 2400 Arthur Ave. Elk Grove Village, IL 60007<br><br>Plaintiff,<br><br>vs.<br><br>RSINDUSTRIES, INC., an Indiana Corporation 8966 Union Mills Dr. Camby, IN 46113<br><br>Defendant. | CASE NO.<br><br>FILED: AUGUST 22, 2008<br>08CV4819<br>JUDGE COAR<br>MAGISTRATE JUDGE SCHENKIER<br>BR |

## COMPLAINT

As its complaint against RSIndustries, Inc., ("RSI"), plaintiff, Symons by Dayton Superior, a division of Dayton Superior Corporation, (hereinafter "Symons"), alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Symons of Dayton Superior is a division of Dayton Superior Corporation, a Delaware corporation. Symons has its principal place of business in Elk Grove, Illinois. Dayton Superior Corporation has its principal place of business in Dayton, Ohio. Symons is primarily engaged in the construction of concrete metal forms and chemicals.

2. Upon information and belief, RSIndustries is an Indiana corporation with its principal place of business in Camby, Indiana. RSI is engaged in business activities involving product design, development and manufacturing of specialized automated machines.

3.  This diversity action brought pursuant to 28 USC § 1332, is of a civil nature involving, exclusive of interest and costs, a sum in excess of $75,000.00. Venue is pursuant to 28 USC 1391(a) because substantial part of the events or omissions giving rise to the claim occurred and a substantial part of property that is the subject of the action is situated.

## NATURE OF THE CASE

4.  This is a case about the defendant RSI not dealing fairly with the plaintiff Symons. RSI originally convinced Symons that it had the ability to design and timely construct for Symons a custom-made automated assembly system for the assembly of concrete STEEL-PLY forms ("the Machinery"). Symons worked hard and in good faith to assist RSI in the development and manufacture of the Machinery and paid RSI more than $450,000 for that purpose. For all of its efforts, RSI has repaid Symons by not keeping its promises, affirmatively misrepresenting to Symons the status of its work and the progress of its construction of the Machinery, and knowingly providing to Symons unfinished goods that were dramatically deficient in quality and completeness contrary to the representations it made to Symons. RSI's wrongful actions and inactions have cost Symons to sustain, at a minimum, hundreds of thousands of dollars in losses. This complaint is necessary to redress the harm that Symons has suffered and may continue to suffer if RSI wrongful conduct is not remedied.

## FACTS COMMON TO ALL COUNTS

5.  In April 2006, Symons contracted with RSI for RSI to design, fabricate and install the Machinery, which was to be capable of assembling plywood panels into steel frames using automated and robotic features.

6.  At all material times, Symons assisted and cooperated with RSI in its project work concerning the Machinery. On various occasions in 2006 and 2007, representatives of Symons

also visited RSI in attempts to determine the status of RSI's design and manufacture of the Machinery. In each instance, RSI assured Symons that it had the expertise and proper staffing to move forward with the project as required contractually. Nonetheless, RSI engaged in a pattern of offering excuses for why the Machinery was behind schedule. It also falsely represented to Symons the status of the completion of the project work, in order to convince Symons to continue with progress payments for the Machinery.

7. By mid-2007, Symons became concerned enough with the lack of progress that the parties engaged in discussion concerning the transfer of the title for the Machinery to Symons. In connection with those discussions, RSI repeatedly assured and represented to Symons that the project was far enough along that little more work needed to be done and such work could be completed promptly.

8. As a result, in June 2007, RSI provided Symons with a bill of sale for the still non-completed Machinery, but continued to conceal its failure to design the Machinery properly and affirmatively misrepresented to Symons that the Machinery was nearly complete and would be operational shortly. Based on RSI's false assurances, Symons allowed RSI to maintain exclusive possession of the Machinery so RSI could finish the project as it had represented and agreed it would do expeditiously.

9. In November 2007, RSI informed Symons that it would no longer continue with the project and requested that Symons take delivery of the machinery even though it was neither complete nor operational.

10. In December 2007 thereafter, Symons took delivery of the Machinery and asked other machine vendors to inspect the Machinery and determine the cost for its completion. As a result of such third-party inspections and analysis, Symons learned that, contrary to RSI's

representation, the Machinery was far from completion. Latent features of the Machinery such as electronic, computer, and robotic elements were either not constructed or constructed improperly, and Symons learned that it would need to expend many hundreds of thousands of dollars in order to render the Machinery operational.

11. Thereafter, Symons advised RSI of such facts and requested that the transaction with RSI be rescinded and RSI return the dollars it received for designing and manufacturing fully-operational Machinery. Despite due and proper notice, RSI refused to honor Symons request.

12. As a result of RSI's wrongful conduct, Symons has expended more than $450,000 for a machine that does not conform to agreed specifications and would take inordinate additional expenditures to complete. The project is years off the originally agreed schedule for delivery of a conforming product and Symons has been required to devote hundreds of hours of manpower in monitoring the Machinery due to RSI's failures and misrepresentations.

## CLAIMS FOR RELIEF

### Count I
### (Breach of Contract)

13. Symons repeats and realleges the allegations set forth in paragraphs 1-12 as if fully set forth herein.

14. RSI materially breached its contract with Symons for the design and manufacture of the Machinery.

15. As a direct and proximate result of RSI's actions and breaches of contract, Symons has been damaged in an amount to be determined at trial.

16. Symons has preformed any and all conditions precedent to its right to recovery from RSI.

## Count II
### (Breach of the Covenant of Good Faith and Fair Dealing)

17. Symons repeats and realleges the allegations set forth in paragraphs 1-12 as if fully set forth herein.

18. All agreements between Symons and RSI required that RSI act in good faith towards Symons and deal fairly with Symons when performing its obligations.

19. RSI breached its good faith obligations in performing its agreements with Symons.

20. As a direct and proximate result of RSI's actions and breaches of contract, including its breaches of its obligation of good faith and fair dealing, Symons has been damaged in an amount to be determined at trial.

21. Symons has performed any and all conditions precedent to its right of recovery.

## Count III
### (Unjust Enrichment)

22. Symons repeats and realleges the allegations set forth in paragraphs 1-12 as if fully set forth herein.

23. In conjunction with RSI's promised design and manufacture of the Machinery, Symons conferred benefits upon RSI.

24. RSI accepted and has retained such benefits under such circumstances that it would be inequitable for RSI to retain such benefits without providing Symons with due and appropriate value therefor.

25. Symons is entitled to an award from RSI based on the value of benefits that is it conferred upon RSI as alleged herein.

### Count IV
### (Rescissionary Remedy)

26. Symons repeats and realleges the allegations set forth in paragraphs 1-12 as if fully set forth herein.

27. As detailed above, before RSI delivered the Machinery to Symons, it assured Symons, among other things, that the Machinery had been properly constructed and was nearly complete for use and operation. Due to the latent nature of various vital aspects and functions of the Machinery, including but not limited to electronic, computer, and robotic elements, Symons was not reasonably able to the true state of the Machinery until it retained third parties to inspect the Machinery. At such time, Symons learned that RSI's assurances had been false and hundreds of thousands of dollars of additional work would be required to make the Machinery operational.

28. In April 2008, Symons sought rescission of the RSI transaction and requested that RSI return all monies that Symons had paid to RSI for the Machinery. RSI refused to honor Symons' request.

29. Based on these circumstances, Symons is entitled to revoke any acceptance of the Machinery and obtain the return of all monies that it paid RSI, with interest as allowed by law. In conjunction therewith, Symons again tenders the Machinery to RSI.

### DEMAND FOR JUDGMENT

WHEREFORE, Symons demands judgment in its favor against RSI as follows:

A. Return of all monies paid by Symons to RSI for the design and manufacture of the Machinery;

B. Compensatory damages in an amount to be determined at trial;

C.  Symons's disbursements and expenses incurred in connection with this action;

D.  Prejudgment and post-judgment interest as permitted by law; and

E.  Such other and further relief as this court demeans proper.

## JURY DEMAND

Plaintiff requests trial by jury of all issues so triable.

Dated this 21st day of August, 2008.

By:   /s/ Jordan Reich
Jordan B. Reich
Robert L. Gegios
Renee M. Mehl
KOHNER, MANN & KAILAS, S.C.
Washington Building
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone:  (414) 962-5110
Facsimile:  (414) 962-8725
jreich@kmksc.com
rgegios@kmksc.com
rmehl@kmksc.com
Attorneys for Symons by Dayton Superior, a division of, Dayton Superior Corporation